UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MITCHELL LEE WALCK,<br><br>        Petitioner,<br><br>v.<br><br>JOSH TEWALT, Director, Idaho Department of Correction,[1]<br><br>        Respondent. | Case No. 1:17-cv-00194-CWD<br><br>**MEMORANDUM DECISION AND ORDER** |

      Earlier in Petitioner Mitchell Lee Walck's habeas corpus matter, the Court granted Respondent Josh Tewalt's Motion for Partial Summary Dismissal, resulting in dismissal of Claims 1(e), 1(f), 1(g), and 3. (Dkts. 23, 49.) The remaining claims are ready for adjudication on the merits. Both named parties have consented to the jurisdiction of a United States Magistrate Judge to conduct all proceedings in this case in accordance with 28 U.S.C. § 636(c). (Dkt. 14.)

      The Court takes judicial notice of the record from Petitioner's state court proceedings, lodged by the parties. *See* Fed. R. Evid. 201(b); *Dawson v. Mahoney*, 451 F.3d 550, 551 (9th Cir. 2006).

---

[1] The current IDOC director has been substituted for the former director, and the warden has been deleted as a result of Petitioner's transfer to a Texas facility.

**MEMORANDUM DECISION AND ORDER - 1**

Having carefully reviewed the record and considered the arguments of the parties, the Court finds that the parties have adequately presented the facts and legal arguments in the briefs and that oral argument is unnecessary. *See* D. Idaho L. Civ. R. 7.1(d). Accordingly, the Court enters the following Order.

## BACKGROUND

Just after midnight on December 1, 2012, law enforcement officers in Athol, Idaho, tried to pull over Petitioner's vehicle. Petitioner failed to stop his truck for the officers, instead leading them on a chase from Athol to Rathdrum, Idaho. Police officers set up a spike system in Rathdrum, causing Petitioner's driver's front tire to go flat, and yet he kept going.

When Petitioner's truck finally came to a stop, he fled on foot. Officer Kevin White pursued Petitioner. Seconds later, Petitioner turned and fired a single shot from his pistol at White, missing him. Officers immediately stopped their pursuit, and Petitioner got away. However, officers discovered Petitioner's identity and name from the vehicle registration left behind in the abandoned truck. (*See* State's Lodging A-1 to A-2.)

Later that same day, Susan Smith went outside her home to let her cat out. Petitioner was hiding behind a woodpile in her yard. He revealed himself, pushed his gun into her back, and led her inside the house. There, he took a bath, trimmed his beard, and prepared food. Petitioner then directed Smith to get into her 2005 Subaru Forrester at gunpoint and drove away with her. (*See id.*)

The next day, Petitioner let Smith go in an Albertson's parking lot in Glendive, Montana, making arrangements for her to stay with a church group when he dropped her off. Petitioner then traveled to North Dakota in Smith's Subaru. Smith immediately called her sister and Idaho law enforcement when she was released by Petitioner. (*See id*.)

In North Dakota, officers received a notification to keep a watch for Petitioner, who might be traveling through the state in the kidnaping victim's Subaru. Petitioner was arrested in North Dakota and charged with Terrorizing, Unlawful Entry into a Motor Vehicle, Possession of Stolen Property (the Subaru stolen from Idaho), and Felon in Possession of a Firearm. (State's Lodging D-8.) Petitioner had served one year on the ten-year Possession of Stolen Property sentence when he was sentenced to prison in Idaho for robbery—with both crimes centering on the Subaru stolen from the kidnaping victim. The Subaru was eventually returned to the victim, with 1500 additional miles on the odometer and various types of damage, and without the key, electronic key fob, and floor mat. (*See id*.)

On advice from public defender Christopher Schwartz, Petitioner entered into a plea agreement with the State of Idaho and pleaded guilty to and was convicted of robbery, second degree kidnaping, and aggravated assault on a law enforcement officer in a criminal action in the First Judicial District Court in Kootenai County, Idaho. A judgment of conviction was entered on April 23, 2014. Petitioner's Idaho sentences were ordered to run concurrently with the North Dakota sentences Petitioner was serving.

# STANDARD OF LAW

Federal habeas corpus petitions are governed by Title 28 U.S.C.§ 2254(d), as amended by the Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Title 28 U.S.C.§ 2254(d) limits relief to instances where the state court's adjudication of the petitioner's claim:

1. resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

2. resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d).

To assess whether habeas corpus relief is warranted, the federal district court reviews "the last state-court adjudication on the merits." *Greene v. Fisher*, 132 S.Ct. 38, 45 (2011). The deferential standard of Section 2254(d) applies regardless of whether the state court decision "is unaccompanied by an opinion explaining the reasons relief has been denied." *Harrington v. Richter*, 562 U.S. 86, 98 (2011). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id*. at 99. When the last adjudication on the merits provides a reasoned opinion, federal courts evaluate the opinion as the grounds for denial. 28 U.S.C. 2254(d).

However, where the state's highest court did not issue a reasoned decision, courts within the Ninth Circuit review the decision of the Idaho Court of Appeals using the "look through" principle of *Ylst v. Nunnemaker*, 501 U.S. 797 (1991), and "presume the higher court agreed with and adopted the reasons given by the lower court." *Curiel v. Miller*, 830 F.3d 864 (9th Cir. 2016).[2]

## DOUBLE JEOPARDY

Following a logical rather than a sequential pattern, the Court begins with Claim 2, Petitioner's double jeopardy claim, because it is the foundation for one of his ineffective assistance of counsel claims, which the Court will discuss directly after Claim 2.

1. **Claim 2**

    A. *Standard of Law*

    The Double Jeopardy Clause of the Fifth Amendment protects against "multiple punishments for the same offense." *Ohio v. Johnson*, 467 U.S. 493, 498 (1984). The protection against cumulative punishments "is designed to ensure that the sentencing discretion of courts is confined to the limits established by the legislature." *Id*. at 499.

    Even though application of double jeopardy principles may not make intuitive sense to a nonlawyer, the law is clearly established that the Double Jeopardy Clause's protections are *not* invoked when a defendant is charged by two separate sovereigns. In the context of simultaneous federal and state sovereign government charges, the Supreme

---

[2] The United States Supreme Court recently clarified: "In *Ylst*, we said that where "the last reasoned opinion on the claim explicitly imposes a procedural default, we will presume that a later decision rejecting the claim did not silently disregard that bar and consider the merits. 501 U.S., at 803, 111 S.Ct. 2590," but that the presumption can be refuted by "strong evidence." *Kernan v. Hinojosa*, 136 S. Ct. 1603, 1605–06 (2016).

**MEMORANDUM DECISION AND ORDER - 5**

Court explained:

> In *Bartkus v. Illinois*, 359 U.S. 121, 79 S.Ct. 676, 3 L.Ed.2d 684 (1959), and *Abbate v. United States*, 359 U.S. 187, 79 S.Ct. 666, 3 L.Ed.2d 729 (1959), this Court reaffirmed the well-established principle that a federal prosecution does not bar a subsequent state prosecution of the same person for the same acts, and a state prosecution does not bar a federal one. The basis for this doctrine is that prosecutions under the laws of separate sovereigns do not, in the language of the Fifth Amendment, "subject [the defendant] for the same offence to be twice put in jeopardy".

*United States v. Wheeler*, 435 U.S. 313 (1978).

The same is true when the sovereigns are two different states. In *Heath v. Alabama*, 474 U.S. 82, 88 (1985), the Supreme Court held that successive prosecutions by two states for the same conduct are not barred by the Double Jeopardy Clause. "When a defendant in a single act violates the 'peace and dignity' of two sovereigns by breaking the laws of each, he has committed two distinct '"offences,"'" the Court explained in *United States v. Lanza*, 260 U.S. 377, 382 (1922).

### B.   Discussion

Plaintiff asserts that his right to be free from double jeopardy was violated because he was convicted of and sentenced for the same crime—once in North Dakota, and again in Idaho. (Dkt. 3, p. 6.) The Idaho Court of Appeals affirmed the summary dismissal of this claim, stating:

> Walck argues he illegally served two sentences for the same crime, claiming on appeal he served a prison sentence in North Dakota and another prison sentence in Idaho for the same crime, the theft of a 2005 Subaru Forester. Walck claims that because the same stolen property resulted in two

> different sentences, his constitutional rights have been violated under the Double Jeopardy Clause.
>
> Walck failed to demonstrate how the district court erred. The district court explained in its notice of intent to dismiss: "Petitioner claims he is 'serving a sentence twice for the same crime,' but the record shows that he is serving his sentences concurrently for distinct crimes." On appeal, Walck argues: "The conviction and sentencing in North Dakota-Idaho clearly substantiate in sentencing records the validity proof thereof to the State and Federal double jeopardy violation constitutional infringement." However, Walck failed to provide sufficient evidence in support of his double jeopardy claim. His statement regarding the clear proof of the double jeopardy claim is conclusory and the district court was free to disregard Walck's legal conclusion. Walck also failed to provide this Court with the judgment of conviction from the North Dakota case. Because Walck did not provide an adequate record to support his claim, we find no evidence of error in the district court's holding that there was not a double jeopardy violation.

(State's Lodging D-4, p.7.) Petitioner tried to provide his North Dakota documents to the Idaho Supreme Court during the petition for review stage of the proceedings, but that court refused to expand the record to include them because the order denying the petition already had been issued. (State's Lodgings D-8, D-9.) This Court has considered the North Dakota documents for the sake of Petitioner's argument.

Based on the standard of law set forth above, the Court finds that, at the time of Petitioner's convictions, the law was clearly established that the Double Jeopardy bar does not apply when a person is charged with crimes by two different states, even though the crimes arise from the same set of facts, here, the theft of a car. In this case, the crimes are not identical, as one is for robbery and one is for possession of stolen property, even

though the same car is involved in each. Accordingly, Petitioner has not shown that the decision of the Idaho Court of Appeals is contrary to, or an unreasonable application of, federal law. This claim will be dismissed with prejudice.

## INEFFECTIVE ASSISTANCE OF COUNSEL

### 1. Claim 1(c): Ineffective Assistance re: Double Jeopardy

#### A. *Standard of Law*

The clearly-established law governing a claim of ineffective assistance of counsel is found in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* requires a petitioner to show that (1) counsel's performance was deficient in that it fell below an objective standard of reasonableness, and that (2) the petitioner was prejudiced by the deficient performance. *Id*. at 684.

In assessing whether trial counsel's representation fell below an objective standard of competence under *Strickland*'s first prong, a reviewing court must view counsel's conduct at the time that the challenged act or omission occurred, making an effort to eliminate the distorting lens of hindsight. *Id*. at 689. The court must indulge in the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Id*.

The *Strickland* Court outlined how to use the factors of deficient performance and prejudice to assess an ineffective assistance claim:

> These standards require no special amplification in order to define counsel's duty to investigate, the duty at issue in this case. As the Court of Appeals concluded, strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic

> choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

466 U.S. at 690-91.

Prejudice under these circumstances means there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Id*. at 684, 694. A reasonable probability is one sufficient to undermine confidence in the outcome. *Id*. at 694.

A petitioner must establish both incompetence and prejudice to prove an ineffective assistance of counsel case. 466 U.S. at 697. On habeas review, the court may consider either prong of the *Strickland* test first, or it may address both prongs, even if one is deficient and will compel denial. *Id.*

### B. *Discussion*

Claim 1(c) is the ineffective assistance counterpart of Claim 2—that trial counsel erred by allowing Petitioner to be sentenced "twice for the same crime in violation of double jeopardy." (Dkt. 3, p. 4.) Because there was no viable double jeopardy claim to assert, trial counsel did not perform deficiently, and no prejudice could have accrued for failing to bring a nonviable claim. This claim is subject to dismissal with prejudice under either § 2254(d) or *de novo* review.

2. **Claim 1(a): Ineffective Assistance of Counsel for Coerced Guilty Plea**

   *A. Standard of Law*

It is well-established that "the negotiation of a plea bargain is a critical phase of litigation for purposes of the Sixth Amendment right to effective assistance of counsel." *Missouri v. Frye*, 566 U.S. 134 (2012) (citation omitted); *see Hill v. Lockhart*, 474 U.S. 52 (1985) (holding that the *Strickland v. Washington* test applies to guilty plea challenges based on ineffective assistance of counsel).

The United States Supreme Court has held that the validity of a guilty plea turns on "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970). A plea is "knowing" if a defendant understands the federal constitutional rights he is waiving by pleading guilty; it is "voluntary" if he "possesses an understanding of the law in relation to the facts." *Boykin v. Alabama*, 395 U.S. 238, 243 n.5 (quoting *Johnson v. Zerbst*, 304 U.S. 458, 466 (1938)). Another definition of "voluntary and intelligent" is if the plea "represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Alford*, 400 U.S. at 31. In *Hill*, the Court held that a plea is not knowing and voluntary if it is the result of defense counsel's advice amounting to ineffective assistance of counsel. 474 U.S. at 59.

   *B. Discussion*

Petitioner did not raise the alleged involuntariness of his guilty plea by motion until two months after the state court had dismissed his post-conviction petition.

**MEMORANDUM DECISION AND ORDER - 10**

Petitioner argued in the motion that he should be permitted to withdraw his plea on the double jeopardy grounds discussed above. (State's Lodging C-1, p. 108-110.) His motion was denied. (*Id.*, pp. 111-15.)

On appeal, the Idaho Court of Appeals determined that Petitioner's guilty plea claim was not properly presented—"a district court does not have jurisdiction to rule on a motion to withdraw a guilty plea after a judgment becomes final"—citing *State v. Jakoski*, 79 P.3d 711, 714 (2003). Importantly, Petitioner did not raise this claim as an ineffective assistance of counsel claim on appeal; therefore, the Idaho Court of Appeals did not address such a claim.

This Court reviews this claim de novo. Petitioner alleges:

> Public Defender Schwartz in two different meetings insisted I take the stand in my own defense. He stated, your case is a no win situation. I'll be your bulldog when the prosecution attacks you. Nothing but sarcasm and negativity. He subjected me to a guilty plea that was not voluntary, knowingly or intelligently entered. P.D. Schwartz failed to even consider an adequate defense. Actually even a whole hearted attempt to put a defense in place. The end result a product of ineffective assistance of counsel (forcing Petitioner to take a plea (non-negotiable one) according to P.D. Schwartz under duress.

(Dkt. 72, p. 4.)

While Petitioner may have thought that counsel did not do enough to investigate his case, Petitioner has not come forward with any physical evidence or witnesses that could have supported a viable defense at trial. Petitioner has not shown that he would have, or should have, gone to trial in the absence of the advice—albeit frank, if not harsh

**MEMORANDUM DECISION AND ORDER - 11**

advice—from the public defender. The foregoing statements of counsel are not coercive and do not constitute duress.

Counsel also told Petitioner, "[Y]ou are mentally disturbed and belong incarcerated and sedated daily." (State's Lodging D-4, p. 6.) Although Petitioner contests this characterization, the Idaho Department of Health and Welfare report in his case similarly concluded: "It is likely that the defendant may present a high risk of danger to the public at large due to his poor coping skills, poor impulse control, and sense of entitlement." (State's Lodging A-2, p. 28.) The sentencing court also concluded that Petitioner posed "a high risk of danger to the public." Counsel's characterization that Petitioner is mentally disturbed and needs incarceration and medication cannot be classified as a threat, but as merely an observation later echoed by a mental health professional and the presiding judge. There is no evidence in the record that counsel threatened Petitioner with these statements or in any other way to induce him to enter into the plea agreement.

During the plea colloquy, the state district judge specifically asked Petitioner whether any threats or promises had caused him to plead guilty. (State's Lodging A-2, p. 14.) Petitioner responded that there were none. The record reflects that Petitioner had several opportunities to advise the court he felt pressured or coerced into pleading guilty. Instead, Petitioner pleaded guilty and answered in the affirmative when the court asked, "Do you believe your guilty plea is a free and voluntary act on your part?" *Id.*, p. 14. The state district court found that Petitioner "made a knowing and voluntary waiver of [his]

right to trial," that he "entered the plea knowing the potential consequence," and that "the plea is [his] free and voluntary act." *Id*., pp. 14-15.

Turning to whether counsel should have advised Petitioner to enter into a plea agreement at all, the Court notes that Petitioner points to no evidence his counsel should have uncovered and no witnesses he should have brought forward in support of Petitioner's case, had he chosen to go trial. Rather, the record is devoid of any facts pointing to a better outcome for Petitioner had he chosen *not* to enter into a plea agreement. This was not just one crime, but a series of very serious crimes. The record does not reflect that Petitioner's counsel performed deficiently regarding the plea proceedings or that prejudice to the defense resulted from counsel's performance. Rather, the record shows that Petitioner made a rational and voluntary choice based on the facts and the advice of counsel. Therefore, this claim is subject to dismissal with prejudice.

3.   **Claim 1(b): Ineffective Assistance: Change of Venue**

   *A.  Standard of Law*

Unlike the other ineffective assistance claims in the Petition, the Idaho Court of Appeals adjudicated the merits of Claim 1(b), that counsel was ineffective for failing to file a motion for change of venue. The *Strickland* standard, set forth above, requiring that the Court give deference to counsel's decisionmaking, is the de novo standard of review. Another layer of deference—to the state court decision—is afforded under AEDPA. In giving guidance to district courts reviewing *Strickland* claims on habeas corpus review, the United States Supreme Court explained:

**MEMORANDUM DECISION AND ORDER - 13**

> The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland*'s standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), "an unreasonable application of federal law is different from an incorrect application of federal law." *Williams*, *supra*, at 410, 120 S.Ct. 1495. A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.

*Richter*, 562 U.S. at 101.

### B. Discussion

Public Defender Schwartz did not file a motion for change of venue, even though he himself said Petitioner's case was "highly publicized" and the "worst of crimes committed in the Panhandle of Idaho." (State's Lodging D-4, p. 6.) On appeal, Petitioner did not lodge the state court transcripts with the Idaho Court of Appeals to enable it to assess his claim.

The Idaho Court of Appeals observed:

> Walck ... failed to meet his burden on his claim that defense counsel was ineffective when it [sic] refused to request a venue change or a jury trial. First, the issue is raised for the first time on appeal. Second, the record does not establish when Walck requested the change of venue and whether his trial counsel refused. Even if we assume counsel refused to file Walck's requested motion to change the venue, Walck failed to provide evidence of the prejudicial effect of the failure to file the motion.

(State's Lodging D-4, p. 6.)

**MEMORANDUM DECISION AND ORDER - 14**

This Court agrees with the state appellate court. Petitioner has failed to present facts showing that a change of venue would have impacted his case, because he pleaded guilty. There are insufficient facts showing that Petitioner could have put on an adequate defense—not because his counsel did not investigate the case, but because the evidence supporting the crime spree clearly pointed to him as the perpetrator, and the crimes were all linked together by the evidence.

Had a change of venue been requested, it very well may have been granted, but there is nothing showing that a jury in a different Idaho county would have assessed the strong evidence against him any differently. The kidnaping and aggravated assault crimes were both serious and shocking—thus, the guilty plea route, rather than a route to trial with a change of venue, was a logical strategic choice by counsel. Petitioner's claim fails on de novo review, and it also fails on deferential review. Because Petitioner has not shown deficient performance or prejudice, the claim will be denied on the merits.

4. **Claim 1(d): Ineffective Assistance: Refusal to Request Co-Counsel**

   A. *Standard of Law*

   The *Strickland* de novo review standard governs this claim. Petitioner must show both deficient performance of counsel and prejudice to his defense. Both factors are required to prevail.

   B. *Discussion*

   Petitioner asserts that trial counsel was ineffective for refusing file a motion for appointment of co-counsel. (Dkt. 3, p. 4.) The Court agrees with Respondent that Petitioner has not provided any factual basis to show that co-counsel was necessary or

**MEMORANDUM DECISION AND ORDER - 15**

that such a motion would have been granted by the trial court if co-counsel had been requested. *See Hill*, 474 U.S. at 59. For example, Petitioner was not charged with the death penalty, which usually requires appointment of co-counsel. *See* Idaho Criminal Rule 44.3 (two attorneys must be appointed as defense counsel in death penalty cases unless the court specifically finds that two are not necessary). While the charges against Petitioner were serious, they were very much straightforward in law and fact. Petitioner has not come forward with anything showing that the issues were complex. Accordingly, this claim fails for lack of a showing of deficient performance or prejudice to the defense. It will be dismissed with prejudice.

## CONCLUSION

Petitioner has not shown that he is entitled to relief on any of the remaining claims. Because all of his claims now have been adjudicated, this entire case will be dismissed with prejudice.

## ORDER

**IT IS ORDERED:**

1. The Petition for Writ of Habeas Corpus (Dkt. 3 ) is DISMISSED with prejudice.

2. The Court does not find its resolution of this habeas matter to be reasonably debatable, and a certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c); Rule 11 of the Rules Governing Section 2254 Cases. If Petitioner files a timely notice of appeal, the Clerk of Court shall forward a copy of the notice of appeal, together with this

Order, to the United States Court of Appeals for the Ninth Circuit. Petitioner may seek a certificate of appealability from the Ninth Circuit by filing a request in that court.

DATED: November 20, 2019

Honorable Candy W. Dale
United States Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 17**